Morgan E. Pietz (SBN 260629)
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone: (310) 424-5557
Facsimile : (310) 546-5301

Attorney for Putative John Does Sued by Malibu Media

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| MALIBU MEDIA, LLC, a California limited liability company, | |
|---|---|
| Plaintiff, | **DECLARATION OF MORGAN E. PIETZ RE: MALIBU MEDIA'S ABUSIVE LITIGATION TACTICS** |
| v. | |
| JOHN DOES 1 through 10, | |
| Defendants. | |

# DECLARATION OF MORGAN E. PIETZ
## RE: MALIBU MEDIA'S ABUSIVE LITIGATION TACTICS

I, Morgan E. Pietz, have personal knowledge of the facts alleged herein and hereby declare as follows:

1. I am an attorney duly admitted to the practice of law in the state and federal courts of the State of California.

2. I am the attorney principally responsible for the representation of several different individuals who all separately received letters from their Internet service providers ("**ISPs**") regarding a subpoena issued by Malibu Media, LLC ("**Malibu Media**") in connection with a lawsuit pending in the Central District of California. I have reviewed all of these letters personally.

3. The letters from the ISPs explain that the ISPs have been served with a subpoena issued by Malibu Media. The letters further explain that Malibu Media alleges in the lawsuit that someone used a particular Internet Protocol ("**I.P.**") address at a particular date and time, to download a copyrighted work owned by Malibu Media. The letters also explain that according to the ISPs' records, one of the I.P. addresses at issue in the lawsuit can be 'associated' with my clients' cable/fiber-optic/dial-up Internet account. Finally, the letters inform my clients that they have, generally, 30 days within which to file a motion to quash this subpoena, or file a motion seeking an extension of time in which to file such a motion, or else the ISP will turn their personal information over to Malibu Media, LLC.

4. It should be noted that my clients do not admit to actually being the person who used the I.P. address specified in the ISP letter to allegedly download a copyrighted work owned by Malibu Media. Rather, *since my clients happen to pay the Internet bill*, unless they do something about the subpoena, namely file a motion to quash, then they face the unhappy prospect of having their personal contact information turned over to Malibu Media. As will be explored later in this case, no doubt, in the age of home networks, wireless routers, viruses, Trojan horses, etc. there is no guarantee that the person

-2-

who allegedly downloaded a copyrighted work even resides in my clients' household. It could be a neighbor, or even someone controlling my clients' computers computer without them knowing it. Nonetheless, on occasion, I refer to my clients as John Doe No. 5, or 6. This is for ease of reference only. Just because I refer to them as such is not intended to be an admission that my clients *actually are* the John Doe alleged in the complaint.

5. I represent the following clients in the following cases, among others, all of which were filed by Malibu Media this year in the Central District of California:

 a. John Doe No. 5, *Malibu Media v. John Does 1-10,* 2:12-CV-3614-GHK-Ex, filed April 26, 2012;

 b. John Doe No. 10, *Malibu Media v. John Does 1-10,* 2:12-CV-3615--DDP-JCGx, filed April 26, 2012;

 c. John Doe No. 9, *Malibu Media v. John Does 1-10,* and 2:12-CV-3622-DSF-JEM, filed April 26, 2012.

6. Each of these three individuals above ("**Clients**") wish to proceed anonymously, so I will not refer to any of them by name.

**(a)     Plaintiff Malibu Media, LLC: Serial Copyright Infringement Plaintiff**

7. I am familiar with the plaintiff in this action, Malibu Media, LLC. In addition to the clients noted above, from this District, I also represent other John Doe clients being sued by Malibu Media outside of the Central District of California. Malibu Media is a serial copyright infringement plaintiff. According to a PACER search I performed on June 18, 2012, *so far this year, Malibu Media has filed 203 copyright infringement lawsuits in 18 federal judicial districts across the country*. Please find attached hereto as <u>Exhibit A</u> a true and correct copy of my search results from this PACER search, which shows all of Malibu Media's pending cases in the federal courts as of June 18, 2012. The search term for the party was "Malibu Media."

8. According to my PACER search, *28 of the 203 copyright infringement cases filed by Malibu Media this year are currently pending in the Central District of California*. Thus, as of June 18, 2012 (more cases are filed everyday) this District is tied

-3-

for the lead with the United States District Court for the District of Colorado, which currently also has 28 pending copyright cases filed by Malibu Media.

**(b)    All of the 28 Cases Are Similar, if Not Identical, in Several Key Respects**

9.  As shown by <u>Exhibit A</u>, a review of the PACER search results for the 28 cases filed by Malibu Media so far this year in this District reveals that the cases appear to have been filed in three waves:

a.  On February 27, 2012, Malibu Media filed its first two infringement cases in this district, with another case filed the following day. The original, low-numbered case, 2:12-CV-1642-RGK-SS, filed February 27, 2012, was assigned to Judge R. Gary Klausner, with discovery referred to Magistrate Suzanne H. Segal.

b.  On April 26, 2012, Malibu Media filed 13 more copyright infringement cases in this District, including all three of the cases where I represent the Clients described above.

c.  On May 29, 2012, Malibu Media filed 11 more copyright infringement cases in this District. (That day, Malibu Media also filed three more cases in the Eastern District of California.)

10.  Based on a review of the dockets, including cursory review of the complaint, and cursory review of the motion for early discovery, for at least one case from the three "waves" of cases, a, b, and c, described above, the following appears to be true:

a.  Each case utilizes essentially an identical complaint: each case is filed exclusively against John Doe defendants; the complaint provides the same background information on BitTorrent, alleges the same two causes of action for copyright infringement against John Doe Defendants 1-10. Then, as attachments to the complaint, there are tables which assign Doe numbers to I.P. addresses, and show which I.P. addresses supposedly downloaded which copyrighted works on which dates.

b.  In each case, Malibu Media moved for early discovery on the strength of essentially the same supporting declarations from the same technical expert, one Mr. Tobias Fieser of IPP Limited. I am familiar with Mr. Fieser. He is an expert who has been

utilized by other plaintiffs in so-called "copyright troll" cases where plaintiffs filed a copyright infringement lawsuit as a means to use the court's subpoena power to obtain an easy settlement. A quick Internet search, conducted June 28, 2012, revealed that he has offered similar declarations to the ones he provided in this case in: *E.g., K-Beech, Inc. v. John Does 1-18*, E.D. Mi. Case No. 11-cv-15226; *Patrick Collins, Inc. v. John Does 1-26*, W.D.N.C. Case No. 11-cv-0394.

   c. Several of the complaints appear to be completely identical clones of one another, where the only difference between them whatsoever, is the I.P. addresses of the John Does. This tracks with what I was later told by Plaintiff's counsel, that some of the cases involve the same cryptographic "hash tag."

   d. It appears that in almost every case, Malibu Media is represented by the same attorney: Leemore Kushner, of the Kushner Law Group, is either the only attorney of record (later cases), or has made a subsequent appearance (February cases), in cases filed in all three groups. (I did notice that Ms. Kushner had not yet appeared in one of the February cases).

   e. However, Malibu Media has also filed five new cases in the Central District, in June, 2012, where Ms. Kushner is not attorney of record.

  11. After Malibu Media refused to definitively state whether it had indeed filed even a single Notice of Related Cases, under my supervision, I had my office staff check the docket for all 28 cases Malibu Media filed in this district and note, in a new column on Exhibit A, whether a Notice of Related Cases was filed. My staff performed this review of the 28 dockets on June 27, 2012, and as of then, Malibu Media did not file a Notice of Related Cases in any of the 28 cases it filed in this District. On June 27, 2012, after my staff performed the review noted above, Malibu Media filed five more cases in the Central District – no notices of related cases were filed in the new cases either.

  12. As of when I finalized this declaration, on July 9, 2012, I still have not seen a Notice of Related Cases come across the ECF system for any of the Malibu Media cases I have appeared (3 so far) in the Central District.

**DECLARATION OF MORGAN E. PIETZ RE: MALIBU MEDIA'S ABUSIVE LITIGATION TACTICS**

**(c)** **The Cases Involve the Same Group of Copyrights at Issue**

13. Attached hereto as <u>Exhibit B</u> is a true and correct summary table showing the copyrighted works at issue in the 28 cases filed by Malibu Media in this District, as of June 26, 2012. This table was prepared by my office staff, under my direct supervision, based on my specific instructions, and double-checked by me personally. This table was prepared by downloading from PACER the "Report on the Filing of an Action Regarding a Copyright" for each of the 28 cases filed by Malibu Media in this District. By looking at this table, one can see the overview of what copyrights are at issue in which of the 28 cases filed by Malibu Media in this District. I would be happy to provide copies of all of the "Reports on the Filing of an Action Regarding a Copyright" for the 28 cases, upon request.

14. Based on looking at the detailed information provided in the exhibits to the complaints, it appears that most of the works at issue were first published in 2009 and 2010, and registered with the copyright office either late last year or early this year.

**(d)** **Abusive Litigation Tactic Number One: Failure to File Notices of Related Cases**

15. Notwithstanding the apparent similarities noted above between the 28 cases Malibu Media has filed so far this year in this District, cases from each group appear to have one more thing in common: ***in none of the cases did Malibu Media file a notice of related cases***. *See* L.R. 83-1.3. Accordingly, it appears that Malibu Media's cases are assigned to 30 different Judicial Officers of this District.

16. Attached hereto as <u>Exhibit C</u>, is a true and correct copy of my complete meet and confer email chain on the Notice of Related Cases issue with Plaintiff's counsel Leemore Kushner. As detailed therein, Ms. Kushner refused to file Notices of Related Cases in Malibu Media's cases in this District, contending that checking the box on the civil case cover sheets was sufficient. Although Ms. Kushner promised to file a Notice of Related Cases in just the two cases I am involved in (which I said was insufficient), as of the finalizing of this declaration, one week later, she had not done so.

-5-
**DECLARATION OF MORGAN E. PIETZ RE: MALIBU MEDIA'S ABUSIVE LITIGATION TACTICS**

17. I happen to know, from listening to a recorded oral argument of a motion heard in a Malibu Media case filed in the Eastern District of Pennsylvania, (E.D. Pn No. CV-12-20840-MMB) that at least in Pennsylvania, when Malibu Media filed multiple cases in the same District, it did the Court the courtesy of noticing the cases as related so they could be assigned to the same Judge. The recording to which I refer is available at this website: http://dietrolldie.com/2012/05/23/hearing-audio-file-for-malibu-media-v-john-does-1-14-212-cv-02084-eastern-district-pa-troll-christopher-fiore-14-may-12/, and, more specifically, at this link (which requires signing up for "DropBox" to access): http://dl.dropbox.com/u/81004257/Hearing_02084%28PA%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.mp3

(e)     **Abusive Litigation Tactic Number Two: Use of Professional "Negotiators" to Extract Settlements for Alleged Infringement**

18. On June 13, 2012, I attempted to contact counsel for Malibu Media via email to ask what its settlement demand is in this case.

19. On June 14, 2012, Ms. Kushner told me via email that the next day, either she or her client, with whom she authorized me to speak, would be getting back to me with a settlement demand. When nobody called on Friday, I followed up with Ms. Kushner first thing Monday morning June 18, 2012.

20. Later on June 18, 2012, I received a voice message from a woman named Elizabeth Jones, who called me from a 786 (Miami) area code. In her voice message, Ms. Jones identified my client's case number and Doe number, and explained that she was given my information by Ms. Kushner who authorized me to speak with her and that "we handle the settlement communications."

21. I called Elizabeth Jones back later that day, June 18, 2012, and she answered. I asked her what company she was with and she said "we work with Malibu Media." I asked her if she was an employee of Malibu Media, and she responded that "we work in relation with them." I asked her if she worked for an independent company that handled Malibu Media's settlement communications, and if so, what was the name of her company. She repeated that "we work with Malibu Media." I asked her to please explain what she

-6-
**DECLARATION OF MORGAN E. PIETZ RE: MALIBU MEDIA'S ABUSIVE LITIGATION TACTICS**

meant by "we" when she said "we work with Malibu Media" because this sentence seemed to imply that she did not actually work for Malibu Media and was therefore not the "client" with whom I had been authorized to speak. She responded that it seemed like I was not really calling because I was serious about a settlement, but that she "handled" Malibu Media's settlement communications. Later in this conversation, Ms. Jones admitted to me that she fielded settlement calls from "20 to 30 counsel per day," and when I asked how long she had been doing this line of work she answered for "a couple years." Based on her answers during our phone call, as well as my experience in similar copyright infringement cases, I concluded that Ms. Jones is likely a third party "negotiator" to whom Malibu Media outsources is collection efforts.

22. On Monday June 25, 2012, at 12:05 p.m., Elizabeth Jones called me again to follow up on our prior discussion. She explained that she understood I had more than one case pending with Malibu Media and asked me to identify what John Does I was representing. Before answering, I pressed her again to please clarify what her exact capacity was in connection with this case. I asked her if she was an attorney, and she said no. After explaining that I did have more than one of these cases, I asked her if I could contact her about all of them, and did she work for a third party company that handled negotiations for Malibu Media. This time, she explained that yes she did work for such a company, and that "we" have a "Joint Sharing Agreement" with "Zero Tolerance, Third Degree, Patrick Collins, K-Beech, Malibu Media, Raw Films, and Nu-Corp." I asked her to repeat that so I could write it down, and she did. She also offered that I could contact her directly to negotiate for any of those plaintiffs.

23. At no time during either of my conversations with Elizabeth Jones, the non-attorney, third party "negotiator," did she ever indicate that she considered our conversation to be confidential or that I should treat it as such. Similarly, I also did not invoke confidentiality. Neither Ms. Jones nor I ever used the word confidential, or any word like it, at any point in our two conversations.

(f) **Abusive Litigation Tactic Number Three: Material Misrepresentation by the Settlement Negotiator as to the Range of Statutory Damages**

24. During my conversation with Elizabeth Jones, Malibu Media's settlement negotiator, on June 18, 2012, she told me that Malibu Media's settlement demand for my client was $19,500. She explained that Malibu Media sought "the minimum statutory damages for each work of $750 per work," and that in the case of my client, John Doe No. 5, there were "a total of 26 registered hits." At first, I did not realize that what Malibu Media's settlement "negotiator" told me is actually incorrect. The actual statutory damage *minimum*, for innocent infringement, is $200 per work. 17 U.S.C. § 504(c)(2). Eventually, it dawned on me that this statement was incorrect; however, I doubt that a non-lawyer speaking to "Elizabeth Jones," or even a lawyer unfamiliar with copyright law, would catch this small but important misrepresentation.

(g) **Abusive Litigation Tactic Number Four: Use of the Court's Subpoena Power to Try and Collect on Claims That Are Not Alleged in the Complaint and Go Beyond the Scope of this Litigation**

25. After Ms. Jones explained Malibu Media's settlement demand to me during our phone conversation on June 18, 2012, wherein she said my client was liable for "a total of 26 registered hits," I told her that this did not sound right to me. I explained that I thought my client was alleged to have infringed less works of authorship than 26. So I pulled the complaint while we were on the phone together, confirmed, and then explained to Ms. Jones that, per Exhibit C of the complaint, my client was alleged to have infringed on only 15 copyrighted works. I further explained that by my math, applying the $750 "minimum" figure, worked out to $11,250, not $19,500. At this point, I asked Ms. Jones to please double check that to make sure that she had the right case and Doe number, because I could not understand why the demand was $19,500, and I thought perhaps she had my client mistaken with someone else.

26. Ms. Jones confirmed that she was sure we were talking about the correct case and Doe, and confirmed the $19,500 figure was not a mistake. She explained to me that

1 | although the complaint alleged a siterip for 15 registered works, on April 1, 2012,
2 | *according to her records*, there had been "a second siterip 2 days later" for 11 more works.
3 | ***I explained that I was trying to settle the claims that were actually alleged in the***
4 | ***Complaint***, and that according to Exhibit C of the Complaint, my client had allegedly
5 | infringed 15 works of authorship, not 26. She again reiterated that according to her
6 | records, there was a "second siterip" on April 3, 2012, and that because of this, the
7 | settlement demand was going to be $19,500 to settle Malibu Media's claims, and that she
8 | "could send me a declaration" about the second siterip. I then asked her if any settlement
9 | had to be all-or-nothing, meaning was it possible for my client to pay $11,250 to settle
10 | only those claims actually alleged in the complaint? She responded that "it is all or
11 | nothing" and that if my client wanted to settle he/she would have to pay the full $19,500.
12 | At this point, I said that since I didn't know anything about the "second siterip" not alleged
13 | in the complaint, it was hard for me to know what to make of this demand, and I asked her
14 | to please send me the declaration she had mentioned. She said she would do so.

15 |     27.    During my conversation with Elizabeth Jones, Malibu Media's negotiator, on
16 | June 18, 2012, I also asked her what the next steps would be if my client did not pay the
17 | $19,500 demanded for settlement. She said that the next step would be "service," and that
18 | "as the case goes on, the settlement number will go up." She further explained that if "our
19 | side has to do more work on the case," the value will go up. I asked her to explain what
20 | she meant by the next step being service, and she explained that after information is
21 | disclosed they would be sending letters asking whether we would accept service. I replied
22 | that it was my understanding that Malibu Media had filed over 200 lawsuits, against
23 | thousands of John Doe defendants, and that it had served essentially none of them, so I
24 | asked her if she had any experience settling claims with defendants who had actually been
25 | served. She responded that she *had* accepted settlement for defendants who had been
26 | served. I asked her how many, to which she responded "I am not the one on trial here."
27 | Then I asked her whether she was new to the company and if she really knew what she was
28 | doing, which is when she explained to me that she fields calls from "20 to 30 counsel per

-9-
**DECLARATION OF MORGAN E. PIETZ RE: MALIBU MEDIA'S ABUSIVE LITIGATION TACTICS**

day" and, when prompted, explained that she had been doing this for "a couple years." I asked her if she could tell me, based on her extensive experience, out of how many cases she had handled, had she accepted a settlement from someone who had already been served with a complaint. She responded "every case is different."

28. Before hanging up with Elizabeth Jones, I reiterated that I would like her to send me the declaration she had mentioned about the "second siterip." I asked her how long it would take her to send me this declaration, and she said that it would be sent to me, by Ms. Kushner, within 24-48 hours. I asked her for her email address so I could follow up, and she insisted that any email contact should go through Leemore Kushner. Then I thanked her for her time and hung up.

29. After waiting the requisite 24-48 hours and not receiving the Declaration Elizabeth Jones had promised me, I emailed Plaintiff's counsel Leemore Kushner to follow up. Attached hereto as <u>Exhibit D</u> is a true and correct copy of the "Declaration" that was sent to me by Ms. Kushner, along with cover email. This Declaration, which was executed by Malibu Media's technical expert, purports to provide details about the "second siterip," which is not alleged in the complaint but which supposedly occurred on April 3, 2012. For reference, the complaint in this case, 12-cv-3614, was filed on April 26, 2012.

**(h)         Abusive Litigation Tactic Number Five: Overbroad Subpoena Seeking Phone Numbers and Emails**

30. On May 1, 2012, Magistrate Brown, of the Eastern District of New York, issued a report and recommendation that was specifically addressed to Malibu Media. In the discovery order part of the report, Judge Brown directed that "Under no circumstances are plaintiffs permitted to seek or obtain the telephone numbers or email addresses of these individuals." The plaintiffs to whom Judge Brown was referring specifically include Malibu Media.

31. Three days later, on May 4, 2012, Malibu Media filed its request for early discovery in this action, 12-cv-3614, seeking to obtain by subpoena the telephone numbers and email addresses of John Does who allegedly reside in this District.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 9, 2012 at Manhattan Beach, California.

_____
Morgan E. Pietz, Declarant