Morgan E. Pietz (SBN 260629)
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone:   (310) 424-5557
Facsimile :   (310) 546-5301

Attorney for: Multiple Putative John Does[1]

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MALIBU MEDIA, LLC, a California limited liability company,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JOHN DOES 1 through 10,<br><br>　　　　Defendants. | Case Numbers:  8:12-cv-0650-RGK-SSx<br>2:12-cv-3614-RGK-SSx<br>2:12-cv-3615-RGK-SSx<br>2:12-cv-3620-RGK-SSx<br>2:12-cv-3622-RGK-SSx<br>2:12-cv-4649-RGK-SSx<br>2:12-cv-4651-RGK-SSx<br>2:12-cv-4652-RGK-SSx<br>2:12-cv-4653-RGK-SSx<br>2:12-cv-4656-RGK-SSx<br>2:12-cv-4660-RGK-SSx<br>2:12-cv-4661-RGK-SSx<br>2:12-cv-4662-RGK-SSx<br><br>Assigned to Hon. R. Gary Klausner<br>Referred to Hon. Suzanne H. Segal<br><br>**JOHN DOES' OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR LEAVE TO SERVE THIRD PARTY SUBPOENAS PRIOR TO A RULE 26(f) CONFERENCE**<br><br>Hearing Date: September 17, 2012<br>Hearing Time: 9:00 a.m.<br>Hearing Room: 850, Roybal |

---

[1] *See* accompanying Dec'l. of Morgan E. Pietz, ¶ 4, for a complete list of the clients of this firm joining in this opposition.

**JOHN DOES' OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR LEAVE TO SERVE THIRD PARTY SUBPOENAS PRIOR TO A RULE 26(f) CONFERENCE**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................ ii

TABLE OF AUTHORITIES.......................................................................... iii

I. INTRODUCTION AND SUMMARY ........................................................1

II. FACTUAL BACKGROUND ON THIS LITIGATION ...............................4

III. EARLY DISCOVERY SHOULD BE DENIED BECAUSE THE REQUESTED SUBPOENAS FAIL ON THE *GILLESPIE* AND *SEMITOOL* FACTORS ......................7

    (a)  Standard for Assessing the Propriety of Subpoenas in File Sharing Cases .......7

    (b)  The Subpoenas are not "Very Likely" to Reveal the Identities of Defendants Because Plaintiff's Theory of the Case Rests on a "Tenuous" Assumption .....9

    (c)  The Subpoenas are Not "Reasonably Likely" to Effectuate Service on Defendants Because Malibu Media Has Shown Through Past Conduct That It is Not Interested In Service or Reaching the Merits ........................................10

    (d)  The Complaint Cannot Withstand a Hypothetical Motion to Dismiss Because Joinder is Impermissible ...................................................................11

    (e)  Plaintiff's "Abusive Litigation Tactics" Also Support Denying Early Discovery Order "On the Basis of Fundamental Fairness" .............................12

IV. COURTS ARE INCREASINGLY ENDORSING "THE SENSIBLE PROTOCOL ADOPTED BY JUDGE BROWN" IN THESE CASES..................................................15

    (a)  Malibu Media Has Mischaracterized Judge Brown's Seminal Order in *In re: Adult Film Cases*.................................................................................15

    (b)  Malibu Media has Actively Ignored Judge Brown's Order in *In re: Adult Film Cases*.................................................................................16

V. CONCLUSION..........................................................................................18

-ii-

**JOHN DOES' OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR LEAVE TO SERVE THIRD PARTY SUBPOENAS PRIOR TO A RULE 26(f) CONFERENCE**

# TABLE OF AUTHORITIES

**Cases**

*AF Holdings, LLC v. John Doe*, D. Min. Case No. 12-cv-1445, Dkt. No. 7, 7/5/12…..1, 9

*AF Holdings LLC v. Does 1-96*, N.D. Cal. No. 11-cv-3335-JSC,

    Dkt. No. 14, 9/27/11 ("*AF Holdings*")…………………………………………..1, 9

*Call of the Wild Movie, LLC v. Does 1-1,062*, D.D.C. Case No. CV-10-455,

    Dkt. No. 40, 3/22/2011……...…………………………………………………….8

*Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578-80

    (N.D. Cal. 1999)………………………………………………………….2, 8, 11

*Diabolic Video Prods. v. Does 1-2099*, 2011 U.S. Dist. LEXIS 58351

    (N.D. Cal. May 31, 2011)………..………………………………………...12

*Digital Sins, Inc. v. Does 1-176*, -- F.R.D. --, 2012 WL 263491, at *3 (S.D.N.Y. Jan. 30,

    2012) …………………………………………….2

*Digital Sins, Inc. v. John Does 1-245*, S.D.N.Y. Case No. 11-cv-8170,

    Dkt. No. 18, 5/15/12  ("*Digital Sins*")…………………………………………15, 18

*Discount Video Center, Inc. v. Does 1-5041*, No. C11-2694CW (PSG)

    (N.D. Cal. filed June 3, 2011)……………………………………………………...7

*Gillespie v. Civiletti,* 629 F.2d 637, 642–43 (9th Cir. 1980)………………………passim

*Hard Drive Productions, Inc. v. Does 1-188*, 809 F. Supp. 2d 1150

    (N.D. Cal. August 23, 2011)

    Case No. 11-cv-01566, Dkt. No. 18 ("*Hard Drive Prods.*") …………..……passim

*In re: Anonymous Online Speakers*, 661 F.3d 1168, 1174–76

    (9th Cir. 2011) ………….…………………….….……………..…………….8

*In re: BitTorrent Adult Film Copyright Infringement Cases*,

    2012 U.S. Dist. LEXIS 61447 (E.D.N.Y. May 1, 2012)

    Case No. CV-11-3995-DRH-GRB, Dkt. No. 39

**JOHN DOES' OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR LEAVE TO SERVE THIRD PARTY SUBPOENAS PRIOR TO A RULE 26(f) CONFERENCE**

("*In re: Adult Film Cases*")……………………………………………… ……pasim

*K-Beech, Inc. v. Does 1-85*, 2011 U.S. Dist. LEXIS 124581
(E.D. Va. Oct. 5, 2011)………………………………………………..12, 13

*Malibu Media v. John Does 1-10*, C.D. Cal. Case No. 12-cv-3623-ODW-PJW,
Dkt. No. 7, 6/27/12……………………………………………........3, 6

*Malibu Media v. John Does 1-13*, E.D. Va. Case No. 12-cv-1156,
Dkt. No. 26, 6/19/12 …………………………………………………...15

*Malibu Media, LLC v. John Does 1-11*, 2012 U.S. Dist. LEXIS 94648
(D.D.C. July 10, 2012) ……………………………………………….1, 5

*Malibu Media, LLC v. Doe*, 2012 U.S. Dist. LEXIS 94705
(E.D. Cal. July 6, 2012) ……………………………………………….16

*Malibu Media, LLC* v. Doe, 2012 U.S. Dist. LEXIS 96333
(E.D. Cal. July 10, 2012) ……………………………………………...16

*Malibu Media, LLC v. Doe*, 2012 U.S. Dist. LEXIS 96351
(E.D. Cal. July 10, 2012) ……………………………………………...16

*New Sensations, Inc. v. Does*, 2011 U.S. Dist. LEXIS 94909
(N.D. Cal. Aug. 24, 2011)…………………………………………...11

*On The Cheap, LLC v. Does 1-5011*, -- F.R.D. --, 2011 WL 4018258,
(N.D. Cal. Sept. 6, 2011)……………………………………….........13

*Pacific Century Int'l., Ltd. v. John Does 1-37*, – F. Supp. 2d –, 2012 WL 1072312
(N.D. Ill. Mar. 30, 2012) Case No. 12-cv-1057, Dkt. No. 23………………...13

*Patrick Collins v. John Does 1-54,* 2012 U.S. Dist. LEXIS 36232
(D. Ariz. Mar. 19, 2012)………………………………………….2, 8

*Patrick Collins, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 75986
(E.D.N.Y. May 31, 2012) ……………………………………………...16

*Patrick Collins, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 96350

(E.D. Cal. July 10, 2012) ……………………………………………………..16

*SBO Pictures,* 2011 WL 6002620……………………………………………… 14

*Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276

    (N.D. Cal. 2002)…………. ……………………………………………2, 7, 8

*Sony Music Entm't Inc. v. Does 1–40*, 326 F. Supp. 2d 556, 566

    (S.D.N.Y. 2004)………………………………………………….passim

*Zero Tolerance Entm't, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 78834

    (S.D.N.Y. June 5, 2012)……………………………………………………..16

**Rules**

Fed. R. Civ. Proc. 26(c)………………………………………… ……………...14

**Periodicals**

*Bizarre Pornography Raid Underscores Wi-Fi Privacy Risks* (April 25, 2011) ………10

-v-

**JOHN DOES' OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR LEAVE TO SERVE THIRD PARTY SUBPOENAS PRIOR TO A RULE 26(f) CONFERENCE**

# I.  INTRODUCTION AND SUMMARY

Plaintiff Malibu Media LLC's renewed motion for early discovery, which seeks leave to issue new subpoenas to the ISPs, purportedly in order to "facilitate identification of the defendants and service of process," is notable for what it ***omits***.

First, plaintiff's brief does not address or even cite to the controlling Ninth Circuit standard from *Gillespie*, which mandates that the requested early discovery must be "very likely" to reveal the identities of the Doe defendants.  *Hard Drive Productions, Inc. v. Does 1-188*, 809 F. Supp. 2d 1150 (N.D. Cal. August 23, 2011) ("*Hard Drive Prods.*") (denying early discovery because "It is abundantly clear that plaintiff's requested discovery is not '***very likely***' to reveal the identities of the Doe defendants."); *citing Gillespie v. Civiletti*, 629 F.2d 637, 642–43 (9th Cir. 1980); *see also, e.g., AF Holdings LLC v. Does 1-96*, N.D. Cal. No. 11-cv-3335-JSC, Dkt. No. 14, 9/27/11, p. 6 ("*AF Holdings*") (denying requested early discovery because it was not "***very likely*** to enable Plaintiff to identify the doe defendants."); *AF Holdings, LLC v. John Doe*, D. Min. Case No. 12-cv-1445, Dkt. No. 7, 7/5/12 (denying early discovery because "the requested discovery was '***not very likely***' to reveal the identity of the alleged infringer").

Second, plaintiff fails to address what many courts have found to be a key concern with these kinds of cases: many of the subscribers whose information will be turned over by the ISPs are not actually the people who downloaded plaintiff's pornographic movies. The unfortunate people sucked into "the morass plaintiff is creating" are simply the people who happen to pay the Internet/cable bill.  In an age when most homes have routers and wireless networks and multiple computers share a single I.P. address, the actual infringer could be a teenage son with a laptop, an invitee, a hacker, or any neighbor using an unencrypted wireless signal. Thus, "there is a reasonable likelihood that the [the Does] may have had no involvement in the alleged illegal downloading that has been linked to his or her IP address." *Malibu Media, LLC v. John Does 1-11*, 2012 U.S. Dist. LEXIS 94648 (D.D.C. July 10, 2012).  Indeed, as one judge observed in another of these cases, "***Plaintiff's counsel estimated that 30% of the names turned over to the ISP's are not***

-1-

*those of the individuals who actually downloaded or shared copyrighted material.*"
*Digital Sins, Inc. v. Does 1-176,* -- F.R.D. --, 2012 WL 263491, at *3 (S.D.N.Y. Jan. 30,
2012).  In short, whomever happens to pay the Internet bill is not "very likely" to be the
actual Doe defendant who downloaded plaintiff's movies.

Third, plaintiff presents absolutely no discovery plan for how it intends to go from
receiving a list of Internet account billing contacts from the ISPs to identifying the actual
Doe defendants who allegedly downloaded plaintiff's pornographic movies.  If Malibu
Media was serious about identifying true defendants and effecting service of complaints, it
would have presented a detailed plan for how it intends to use the subscriber information it
hopes to receive from the ISPs to begin to ascertain the real identifies of the actual
infringing defendants.  The subpoenas seek information from the ISPs that is not "very
likely" or even "reasonably likely" to identify actual defendants, so plaintiff's motion
should be denied on this basis alone. *E.g., Hard Drive Productions, Inc. v. Does 1-188*, 809
F. Supp. 2d 1150 (N.D. Cal. August 23, 2011); *see Gillespie,* 629 F.2d at 642–43.

Fourth, plaintiff does not contest the undersigned's charge that plaintiff seldom, if
ever, actually serves anyone.  Accordingly, based on plaintiff's past rack record,[2] there is
no reason to believe the requested subpoenas are "reasonably likely" to identify true
defendants or effectuate service of the complaint. *Patrick Collins, Inc. v. Doe*, 2012 U.S.
Dist. LEXIS 36232 (D. Ariz. Mar. 19, 2012); *Columbia Ins. Co. v. seescandy.com*, 185
F.R.D. 573, 578-80 (N.D. Cal. 1999); *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208
F.R.D. 273, 276 (N.D. Cal. 2002) *Sony Music Entm't Inc. v. Does 1–40*, 326 F. Supp. 2d
556, 566 (S.D.N.Y. 2004).  Here, "it is evident that *expedited discovery will not lead to*
*identification of the Doe defendants or service of process. Indeed, the fact that no*
*defendant has ever been served in one of these mass copyright cases* belies any effort by

---

[2] Nationwide, as of July 17, 2012, Malibu Media had 35 cases pending that were at least 120-days
old.  In these 35 cases, Malibu Media sued 633 John Does for copyright infringement.  As of July
17, 2012, in the 35 cases over 120-days old, *Malibu Media appears to have formally served*
*precisely zero (0) out of 633 John Does/Defendants*.  In most cases, Malibu Media simply
dismissed the Does at or near the service of process deadline.  Dec'l. of Morgan E. Pietz ¶¶ 22–24.

**JOHN DOES' OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR LEAVE TO SERVE THIRD**
**PARTY SUBPOENAS PRIOR TO A RULE 26(f) CONFERENCE**

plaintiff to allege that the discovery *will* lead to identification of and service on the Doe

defendants." *Hard Drive Productions, Inc. v. Does 1-188*, 809 F. Supp. 2d 1150 (N.D. Cal.

August 23, 2011) (Case No. 11-cv-01566, Dkt. No. 18, at p. 11) ("*Hard Drive Prods.*")

Fifth, although the renewed motion does address whether the complaint could

withstand a hypothetical motion to dismiss for improper joinder, per the Court's

instructions, plaintiff utterly ignores and fails to refute the increasingly accepted majority

view that swarm joinder is inappropriate in these cases. As is examined in further detail in

the Does' accompanying counter-motion for severance, in some jurisdictions, there has

been a split of authority on the propriety of joinder in these cases.  Recently, the issue was

certified for interlocutory appeal to the D.C. Circuit by Judge Beryl Howell, who has

authored the most significant opinions favoring plaintiffs.[3]  Judge Howell's view is that it

is premature to address severance at the early discovery stage.  Many more courts have

denied or reconsidered early discovery requests and severed all Does other than Doe No. 1,

reasoning that people who supposedly shared similar[4] files months apart from each other

are not part of the same "transaction."  This Court should side with the majority of other

Courts which have held that deferring a ruling on joinder only encourages plaintiffs to mis-

join as many Does as possible, thereby perpetuating the kind of abusive litigation tactics

being noted in these lawsuits by Courts across the country.  Here, plaintiff has not and

cannot "offer evidence justifying joinder of the Doe Defendants." *Malibu Media v. John

Does 1-10*, C.D. Cal. Case No. 12-cv-3623-ODW-PJW, docket no. 7, 6/27/12, p. 5.

Sixth, plaintiff does not refute or address the undersigned's allegations of serious

litigation misconduct.  As Judge Brown noted in a seminal Malibu Media case, perhaps

"the most persuasive argument against permitting plaintiffs to proceed with early discovery

---

[3] Prior to becoming a member of the federal judiciary, Judge Howell was a lobbyist for the
Recording Industry Association of America ("RIAA").  The RIAA pioneered this kind of lawsuit.
[4] Here, in certain cases, plaintiff alleges that the Does actually shared *different* files with each
other, generally, over a range of 2-3 months apart from each other.  Although plaintiff alleges that
Does shared the same unique hash file, a look at any of the Exhibit Cs to any of the complaints
shows that here, different Does are accused of downloading *different* movies.

**JOHN DOES' OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR LEAVE TO SERVE THIRD
PARTY SUBPOENAS PRIOR TO A RULE 26(f) CONFERENCE**

arises from the clear indicia, both in this case and in related matters, that plaintiffs have employed abusive litigations tactics to extract settlements from John Doe defendants."[5]  As has been averred previously, and as averred again here, ***the plaintiff here is running the complete playbook of copyright troll abusive litigation tactics***.  Specifically, the plaintiff: (i) is using the same "settlement negotiators" as other notorious copyright trolls; (ii) using subpoena information to collect on claims that go beyond the complaint;[6] (iii) willfully violating courts' notice of related case rules to try and fly under the radar; (iv) seeking John Doe phone numbers and email addresses despite a court order telling Malibu Media not to do so anymore; (v) misrepresenting the range of potential damages.  Dec'l. of Morgan E. Pietz, ¶¶ 6–24.

In short, plaintiff has failed to meet its burden of showing that there is good cause sufficient to justify the issuance of the requested subpoenas.  The requested discovery should be denied, and all Does other than Doe No. 1 should be severed.

## II.  FACTUAL BACKGROUND ON THIS LITIGATION

Plaintiff Malibu Media, LLC, which owns the rights to various pornographic movies, is a serial filer of copyright infringement lawsuits, and a notorious solicitor of unjust "settlements," which border on extortion.  In these lawsuits, Malibu Media alleges that unknown individuals used certain I.P. addresses to access the Internet, and then used an application called BitTorrent to illegally download Malibu Media's pornographic movies.[7]  After filing a complaint, Malibu Media generally seeks leave of court to conduct early discovery and issue subpoenas to Internet Service Providers, which demand that the

---

[5] *In re: Adult Film Cases, supra,* at pp. 16–17.

[6] This tactic is particularly troubling, *see* Dec'l of Morgan E. Pietz ¶¶ 14–19.

[7] The very first step in Malibu Media's business model is that it hires a "technical expert" which "logs" the I.P. addresses that are used to download plaintiff's content on BitTorrent.  In computer terminology, plaintiff appears to be operating what is called a "honeypot," which is essentially a baited trap.  Plaintiff's pornographic movies are the bait, and the trap is these lawsuits.  Rather than try and remove its content from BitTorrent by filing DMCA takedown notices, plaintiff prefers instead to actively participate in—and possibly facilitate—the infringing downloads of which it now complains.  In other words, plaintiff appears to prefer to collect a list of potential people to sue rather than take other affirmative steps to remove its content from BitTorrent.

ISPs disclose the account details of the I.P. addresses used to download plaintiff's movies. In order to obtain Court authorization to issue subpoenas—the single key legal issue driving Malibu Media's business model—Malibu Media generally makes several material misrepresentations to the Court.  Notably, here Malibu Media claimed, incorrectly, in its original early discovery requests that courts are "unanimous" in granting early discovery in cases like this and represents that "the discovery sought will facilitate identification of the defendants and service of process."  Since Malibu Media's early discovery requests are usually ***unopposed***, many Courts, including Courts of this District, have allowed Malibu Media to issue subpoenas to ISPs.

However, really, this is all a sham.  Malibu Media pretends that it is interested in "identifying" and "serving" actual defendants.  But that is simply not true.  As has been shown district by district, in dozens if not hundreds of cases, what plaintiff is really interested in is using this Court's subpoena power, and the stigma associated with pornography, to leverage improper "settlements" from Internet subscribers who may ***or may not*** have actually downloaded plaintiff's movies.

As noted above, one big problem with this scheme—which was not addressed in plaintiff's original motion or in the renewed motion—is that many of the subscribers whose information will be turned over by the ISPs are not actually the people who downloaded plaintiff's pornographic movies.  The unfortunate people sucked into this morass are almost always the people who happen to pay the Internet/cable bill.  In an age when most homes have routers and wireless networks and multiple computers share a single I.P. address, the actual infringer could be a teenage son with a laptop, an invitee, a hacker, or any neighbor using an unencrypted wireless signal. Thus, "there is a reasonable likelihood that the [the Does] may have had no involvement in the alleged illegal downloading that has been linked to his or her IP address."  *Malibu Media, LLC v. John Does 1-11*, 2012 U.S. Dist. LEXIS 94648 (D.D.C. July 10, 2012).  Indeed, as one judge observed in another of these cases, "***Plaintiff's counsel estimated that 30% of the names turned over to the ISP's are not those of the individuals who actually downloaded or***

*shared copyrighted material.*" *Digital Sins, Inc. v. Does 1-176,* -- F.R.D. --, 2012 WL 263491, at *3 (S.D.N.Y. Jan. 30, 2012).

This inconvenient fact, however, generally does not stop the plaintiff from demanding that a subscriber (i.e., whomever happens to pay the bill) should fork over several thousand dollars to settle the case, upon threat of being publicly accused of illegally downloading explicit pornography. That threat is essentially the heart of this business: pay up, or else plaintiff will publicly shame you as someone who watches pornography.  Many subscribers, even if they are innocent, simply pay the ransom rather than face the expense, uncertainty and potential embarrassment of defending themselves.

Plaintiff files hundreds of these cases nationwide, against thousands of Does, knowing full well that none of the Does will ever be served, or even named, except perhaps for a token few, to make a show of it.  A look at plaintiff's past track record—0 out of 633 Does formally served, in cases over 120 days old, as of July—belies plaintiff's representation, which it makes repeatedly to courts around the country, and which it reiterates again here in the instant motion, "that the discovery sought will facilitate identification of the defendants and service of process." Kushner Dec'l. i/s/o Early Discovery Request at ¶ 4. While the subpoenas requested by plaintiff in these cases might *theoretically* "facilitate" identification of and service upon actual defendants, in *actuality*, based on plaintiff's past track record in its cases over 120 days old, the subpoenas *never* do.  Dec'l. of Morgan E. Pietz, ¶¶ 22–24.  However, the issuance of subpoenas *almost always* results in the consummation of "settlements," many of which are paid by people who did not actually download plaintiff's movies, but do not wish to incur the expense, uncertainty and potential embarrassment of defending themselves.  As Judge Wright, who was previously assigned a few of the Malibu Media cases in this District noted, "The federal courts are not cogs in a plaintiff's copyright-enforcement business model. ***The Court will not idly watch what is essentially an extortion scheme, for a case that plaintiff has no intention of bringing to trial***." *Malibu Media v. John Does 1-10*, C.D. Cal. Case No. 12-cv-3623-ODW-PJW, docket no. 7, 6/27/12, p. 6.  (Emphasis added).

Some plaintiff's lawyers in these cases have taken a step in the right direction by admitting that actually naming and serving someone with a complaint in these cases, based on nothing more than the subscriber information obtained from the ISP, would likely violate Rule 11.  *E.g., Discount Video Center, Inc. v. Does 1-29*, D. Mass. Case No. 12-cv-10805, Dkt. No. 40, 8/24/12, p. 3 (Doe Mtn. to dismiss). However, plaintiff's counsel here does not seem prepared to make such a concession.  Instead, per plaintiff's renewed motion papers, plaintiff seems ready to treat ISP subscribers as actual defendants. Plaintiff states in its papers that, "Plaintiff attached as Exhibit A to each Complaint a list of IP address, the date and time of the infringing act, and corresponding ISPs.  Plaintiff has thereby demonstrated that Defendants can be corresponded to their allegedly infringing acts." P's Renewed Motion, p. 4.  There is a step missing here; plaintiff simply assumes, incorrectly, that whomever pays the bill for the Internet connection "can be corresponded" to the Defendant that committed the allegedly infringing acts.  Maybe yes, maybe no; but plaintiff has no plan to get from A to C.  Further, as far as the undersigned is aware, when plaintiff's professional "settlement negotiators" have called up ISP subscribers or their counsel, threatened to "name" them, and pressured them to settle over the phone, there has never been any mention of Rule 11 safeguards.

Finally, if plaintiff's past history any guide, after requesting as many extensions as it can get of the Rule 4(m) service deadline—to allow its "settlement negotiators" to work the phones for as long as possible—Malibu Media will simply dismiss the case without prejudice.  Dec'l. of Morgan E. Pietz, ¶ 24.

## III.  EARLY DISCOVERY SHOULD BE DENIED BECAUSE THE REQUESTED SUBPOENAS FAIL ON THE *GILLESPIE* AND *SEMITOOL* FACTORS

**(a)    Standard for Assessing the Propriety of Subpoenas in File Sharing Cases**

Generally, a court may authorize early discovery before the Rule 26(f) conference for "good cause." *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). "Good cause may be found where the need for expedited discovery, in

consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.*

One point Malibu Media tries to gloss over in its requests for early discovery is that the subpoenas in these cases implicate the First Amendment right to anonymity, which extends to online file sharing. *Sony Music Entm't Inc. v. Does 1–40*, 326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004) (surveying case law and concluding "that the use of P2P file copying networks to download, distribute, or make sound recordings available qualifies as speech entitled to First Amendment protection."); *Call of the Wild Movie, LLC v. Does 1-1,062*, D.D.C. Case No. CV-10-455, Dkt. No. 40, 3/22/2011, p. 21 (Howell, J.) ("file-sharers are engaged in expressive activity, on some level, when they share files on BitTorrent, and their ***First Amendment rights must be considered before the Court allows the plaintiffs to override the putative defendants anonymity by compelling production of the defendants' identifying information***."); *see also  In re: Anonymous Online Speakers*, 661 F.3d 1168, 1174–76 (9th Cir. 2011) (noting different Constitutional standards applied to different kinds of anonymous speech).

In considering whether a mass infringement plaintiff's purported need for civil discovery should override the Does' Constitutional rights to anonymity, Courts generally apply four factors, which are referred to in cases as the *Semitool* factors or the *Sony Music* factors. [8]  Courts consider whether: (1) the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) the plaintiff has identified all previous steps taken to locate the elusive defendant; (3) the plaintiff's suit against defendant could withstand a motion to dismiss; and (4) the plaintiff has demonstrated that there is a reasonable likelihood of being able to identify the defendant through discovery such that service of process would be possible. *Patrick Collins, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 36232 (D. Ariz. Mar. 19, 2012);  *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573,

---

[8] The Ninth Circuit's *Semitool* factors largely track with the Second Circuit's *Sony Music* factors.

-8-

**JOHN DOES' OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR LEAVE TO SERVE THIRD PARTY SUBPOENAS PRIOR TO A RULE 26(f) CONFERENCE**

578-80 (N.D. Cal. 1999); *Sony Music Entm't Inc. v. Does 1–40*, 326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004).

In addition, in many cases like this one, Courts have applied the Ninth Circuits rule from *Gillespie* and "ask whether the requested early discovery is 'very likely' to reveal the identities of the Doe defendants." *Hard Drive Prods., supra,* at p. 18 *citing Gillespie v. Civiletti,* 629 F.2d 637, 642–43 (9th Cir. 1980).

**(b)   The Subpoenas are not "Very Likely" to Reveal the Identities of Defendants Because Plaintiff's Theory of the Case Rests on a "Tenuous" Assumption**

Contrary to the incorrect assertion Malibu Media made in its original *unopposed* papers seeking early discovery, it is hardly "unanimous" that courts permit early discovery in cases like these.

In reality, numerous courts have applied the *Gillespie* "very likely" standard and denied early discovery and/or quashed subpoenas in other mass copyright infringement cases just like this one, where pornographers sought to subpoena John Doe contact information from ISPs. *AF Holdings LLC v. Does 1-96*, N.D. Cal. No. 11-cv-3335-JSC, Dkt. No. 14, 9/27/11, p. 6 ("*AF Holdings*") (denying requested early discovery because it was not "very likely to enable Plaintiff to identify the doe defendants."); *Hard Drive Prods., supra,* at pp. 4–6 (denying early discovery because "It is abundantly clear that plaintiff's requested discovery is not 'very likely' to reveal the identities of the Doe defendants."); *AF Holdings, LLC v. John Doe*, D. Min. Case No. 12-cv-1445, Dkt. No. 7, 7/5/12 (denying early discovery because "the requested discovery was 'not very likely' to reveal the identity of the alleged infringer.").

The same result was also reached by Magistrate Judge Gary R. Brown of Eastern District of New York in an increasingly important case involving a few of the most notorious copyright trolls, including Malibu Media.  *In re: Adult Film Cases*, *supra*, at p. 23 ("the Court is not inclined to grant the broad early discovery sought by Malibu and Patrick Collins.")  As noted by Judge Brown, who was assigned all of the adult film mass infringement cases in the Eastern District of New York, "***the assumption that a person***

1   *who pays for Internet access at a given location is the same individual who allegedly*

2   *downloaded a single sexually explicit film is <u>tenuous</u>, and one that has grown more so*

3   *over time*." *In re: Adult Film Cases*, *supra*, at p. 6 (emphasis added).  As Judge Brown

4   further explained, this is due, in part, to the proliferation of home networks and wireless

5   routers, a single IP address may support multiple Internet users.[9]  *Id.*  Thus, "it is no more

6   likely that the subscriber to an IP address," who is the person who becomes the unfortunate

7   target of the copyright troll's collection efforts, "carried out a particular computer function

8   – here the purported illegal downloading of a single pornographic film – than to say an

9   individual who pays the phone bill made a specific telephone call." *Id.*  "Most, if not all, of

10  the IP addresses will actually reflect a wireless router or other networking device, meaning

11  that while the ISPs will provide the name of its subscriber, *the alleged infringer could be*

12  *the subscriber, a member of his or her family, an employee, invitee, neighbor or*

13  *interloper*." *Id.* at p. 8 (emphasis added).  Thus, Judge Brown also denied the broad early

14  discovery requested by Malibu Media and others in that case.  *Id.* at p. 23.

15  **(c)      The Subpoenas are Not "Reasonably Likely" to Effectuate Service on**

16  **Defendants Because Malibu Media Has Shown Through Past Conduct That It**

17  **is Not Interested In Service or Reaching the Merits**

18          Courts in both the Ninth and Second Circuits agree that in John Doe online

19  infringement cases, it must be "reasonably likely" that the discovery requested will help

20  *effectuate service on a defendant. Sony Music Entm't Inc. v. Does 1–40*, 326 F. Supp. 2d

21  556, 566 (S.D.N.Y. 2004) (surveying "cases evaluating subpoenas seeking identifying

22  information from ISPs" and concluding that subpoena must be "sufficiently specific to

23

---

[9] Carolyn Thompson writes in an MSNBC article of a raid by federal agents who kicked down the
door of a home that was linked to downloaded child pornography. The identity and location of the
subscriber were provided by the ISP. The desktop computer, iPhones, and iPads of the homeowner
and his wife were seized in the raid. Federal agents returned the equipment after determining that
no one at the home had downloaded the illegal material. Agents eventually traced the downloads to
a neighbor who had used multiple IP subscribers' Wi-Fi connections (including a secure
connection from the State University of New York). *See* Carolyn Thompson, *Bizarre Pornography
Raid Underscores Wi-Fi Privacy Risks* (April 25, 2011),
http://www.msnbc.msn.com/id/42740201/ns/technology_and_science-wireless/

24

25

26

27

28

**JOHN DOES' OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR LEAVE TO SERVE THIRD
PARTY SUBPOENAS PRIOR TO A RULE 26(f) CONFERENCE**

establish a ***reasonable likelihood*** that the discovery request would lead to ***identifying information that would make possible service upon particular defendants*** who could be sued in federal court.") (emphasis added); *New Sensations, Inc. v. Does*, 2011 U.S. Dist. LEXIS 94909 (N.D. Cal. Aug. 24, 2011) ("In determining whether there is good cause to allow expedited discovery to identify anonymous internet users named as doe defendants, courts consider whether:. . .(4) the plaintiff has demonstrated that there is a ***reasonable likelihood of being able to identify the defendant through discovery such that service of process would be possible***.") (emphasis added) *citing Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999).

      Here, "As discussed above, it is evident that ***expedited discovery will not lead to identification of the Doe defendants or service of process. Indeed, <u>the fact that no defendant has ever been served</u> in one of these mass copyright cases belies any effort by plaintiff to allege that the discovery will lead to identification of and service on the Doe defendants***." *Hard Drive Prods.*, *supra*, at p. 11 (emphasis added).  In reality, here there is ***little to no chance*** most of the Does will be served, much less a "reasonable likelihood" that the subpoenas will lead to service on the actual infringers.  *See id.*

**(d)**    **The Complaint Cannot Withstand a Hypothetical Motion to Dismiss Because Joinder is Impermissible**

      In evaluating cases pitting the Does' First Amendment right to anonymity against a plaintiff's purported need to conduct civil discovery so as to prosecute a lawsuit, courts must require that in order to obtain discovery of a John Does' identity, ***the plaintiff's complaint must be able to withstand a hypothetical motion to dismiss.***  *Hard Drive Prods., supra,* pp. 3, 8–10 (plaintiff must show that its "suit against defendant could withstand a motion to dismiss."); *see also Patrick Collins v. John Does 1-54,* 2012 U.S. Dist. LEXIS 36232, *8 (D. Ariz. Mar. 19, 2012).

      Here, there is an obvious flaw with plaintiff's complaint such that it should be dismissed: all of the John Does other than John Doe No. 1 are impermissibly joined.  As explained in further detail in the Does' counter motion for severance, joinder here is not

permissible.  Accordingly, the Court should follow the lead of Magistrate Judge Brown, who held that early discovery should be denied because "While the plaintiff has alleged that it owns a valid copyright and that defendants copied the copyrighted work, the court concludes that the complaint could and should be dismissed for misjoinder as to all but a single Doe defendant."  *In re: Adult Film Cases., supra,* at p. 18; *citing Diabolic Video Prods. v. Does 1-2099*, 2011 U.S. Dist. LEXIS 58351, *9 (N.D. Cal. May 31, 2011).

**(e)    Plaintiff's "Abusive Litigation Tactics" Also Support Denying Early Discovery Order "On the Basis of Fundamental Fairness"**

As noted above, Magistrate Judge Brown of the Eastern District of New York has explained that perhaps,

> "the most persuasive argument against permitting plaintiffs to proceed with early discovery arises from the clear indicia, both in this case and in related matters, that plaintiffs have employed abusive litigations tactics to extract settlements from John Doe defendants.  Indeed, this may be the principal purpose of these actions, and these tactics distinguish these plaintiffs from other copyright holders with whom they repeatedly compare themselves. *See, e.g., K-Beech*, Pl. Mem. in Opp. at 3, DE (arguing that this decision "will affect the rights of intellectual property holders across all segments of society"). While not formally one of the *Sony Music* factors, these facts could be viewed as ***a heightened basis for protecting the privacy of the putative defendants***, or simply grounds to deny the requested discovery on the basis of fundamental fairness." *In re: Adult Film Cases, supra,* at p. 16.

***The plaintiff here is actually one of the three plaintiffs Judge Brown was specifically describing***: Malibu Media, K-Beech, and Patrick Collins.  *Id.* at p. 17 ("I find counsel for K-Beech has already engaged in improper litigation tactics in this matter, and

-12-

**JOHN DOES' OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR LEAVE TO SERVE THIRD PARTY SUBPOENAS PRIOR TO A RULE 26(f) CONFERENCE**

find it highly probable that Patrick Collins Inc. and Malibu will likely engage in similar tactics if permitted to proceed with these mass litigations.")

One of the main tactics that Judge Brown found so "improper" was the use of "settlement negotiators" whom, notwithstanding a John Doe's protestations of innocence, "offer to settle with Doe defendants so that they can avoid digging themselves out of the morass plaintiff is creating." *Id.* at pp. 8–9, 17, *citing On The Cheap, LLC v. Does 1-5011*, -- F.R.D. --, 2011 WL 4018258, at \*4 (N.D. Cal. Sept. 6, 2011).  As one court explained of K-Beech, "Some defendants have indicated that the plaintiff has contacted them directly with harassing telephone calls, demanding $2,900 in compensation to end the litigation." *K-Beech, Inc. v. Does 1-85*, 2011 U.S. Dist. LEXIS 124581, at \*6 (E.D. Va. Oct. 5, 2011).

***Seven of the most notorious copyright trolls, including the plaintiff here, all employ the same third party company, based in Miami, to provide these harassing, "settlement negotiator" services***, pursuant to a "Joint Sharing Agreement." Dec'l. of Morgan E. Pietz, ¶¶ 7–12.  Specifically, "Zero Tolerance, Third Degree, Patrick Collins, K-Beech, Malibu Media, Raw Films, and Nu-Corp," all pool their resources to extract "settlements" as efficiently as possible.  *See id.*, ¶ 11.

The plaintiff will no doubt protest that there is nothing wrong with seeking to settle civil actions.  However, as Judge Brown correctly explains,

> "It would be unrealistic to ignore the nature of plaintiffs' allegations – to wit: the theft of pornographic films – which distinguish these cases from garden variety copyright actions. Concern with being publicly charged with downloading pornographic films is, understandably, a common theme among the moving defendants. As one woman noted in *K-Beech*, "having my name or identifying or personal information further associated with the work is ***embarrassing, damaging to my reputation in the community at large and in my religious community***." Mtn. to Quash, ¶5, DE [7]. Many courts evaluating similar cases have shared this concern. *See ,e.g., Pacific Century Int'l, Ltd. v. Does 1-37,* – F. Supp. 2d –, 2012 WL 1072312, at \*3 (N.D. Ill. Mar. 30, 2012)

("the **subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies, settle**"); *Digital Sins,* 2012 WL 263491, at *3 ("This concern, and its potential impact on social and economic relationships, could **compel a defendant entirely innocent of the alleged conduct to enter an extortionate settlement**") *SBO Pictures,* 2011 WL 6002620, at *3 (defendants "whether guilty of copyright infringement or not- would then have to decide whether to pay money to retain legal assistance to fight the claim that he or she illegally downloaded sexually explicit materials, or pay the money demanded. This creates **great potential for a coercive and unjust 'settlement'"** ). . . .

The Federal Rules direct the Court to deny discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. Proc. 26(c)(1). **This situation cries out for such relief.**" *Id.* at. pp. 17–18.

Moreover, here, in addition to (i) the use of the infamous Miami-based "settlement negotiator" company, there is ample evidence of other "abusive litigation tactics" employed by Malibu Media: (ii) using the subpoena process to collect on claims that go beyond the complaint;[10] (iii) willfully violating courts' notice of related case rules; (iv) seeking John Doe phone numbers and email addresses despite a court order telling plaintiff not to do so; and (v) misrepresenting the range of potential damages.  Dec'l. of Morgan E. Pietz , ¶¶ 6–24.

Federal Rule of Civil Procedure 1 requires that disputes be resolved in a manner that is "just" as well as speedy an inexpensive.  Fed R. Civ. Proc. 1.  Further, as noted by Judge Brown, this situation "cries out" for relief to protect the John Does from "annoyance, embarrassment, oppression or undue burden."  Fed. R. Civ. Proc. 26(c)(1).

/

---

[10] Dec'l. of Morgan E. Pietz ¶¶ 14–19.

**JOHN DOES' OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR LEAVE TO SERVE THIRD PARTY SUBPOENAS PRIOR TO A RULE 26(f) CONFERENCE**

## IV.  COURTS ARE INCREASINGLY ENDORSING "THE SENSIBLE PROTOCOL ADOPTED BY JUDGE BROWN" IN THESE CASES

**(a)   Malibu Media Has Mischaracterized Judge Brown's Seminal Order in _In re: Adult Film Cases_**

Malibu Media is now apparently in the habit of trying to mitigate the damage done by Magistrate Brown's scathing order and report in _In re Adult Film Cases_, *supra*, by arguing that this order has subsequently been "rejected" by Magistrate Thomas E. Boyle, who also sits in the Eastern District of New York, and who supposedly "reached the opposite result" in a later case, "finding in a case similar to this that joinder is proper, and denying a doe defendant's motion to quash the subpoena."  Plaintiff's Opp'n to Doe 5's Motion for Sanctions re: Malibu Media's Repeated Violations of Notice of Related Cases Rule, C.D. Cal. Case No. 12-cv-3614, Dkt. No. 20, p. 6, 7/16/12.  To put it as charitably as possible, this is a material mischaracterization of Judge Boyle's order of June 19, 2012.

In reality, Judge Boyle did not "reject" Magistrate Brown's order whatsoever, or find that "joinder was proper."  Rather, Judge Brown denied the motion to quash because the *pro se* Doe defendant bringing it failed to follow the Court's instructions that he identify himself to the Court by Doe number, and, as to joinder, Judge Boyle concluded that since the Doe was not properly identified, he lacked standing to seek severance.  Far from holding that joinder was "proper," Judge Boyle simply concluded that since the Doe lacked standing, "At this point in the action, it is premature to make such a determination." However, even the denial, was "without prejudice to renewal [of Doe's motion] after service of process is complete as to any defendant."  *Malibu Media v. John Does 1-13*, E.D. Va. Case No. 12-cv-1156, Dkt. No. 26, 6/19/12 (Boyle, J.).

In fact, quite to the contrary of what Malibu Media would have the Court believe, Courts across the country are increasingly *endorsing* the "sensible protocol adopted by Magistrate Judge Brown." *Digital Sins, Inc.*, *supra*, at p. 8 (reviewing prior cases, explicitly adopting "most especially the comprehensive Report and Recommendation of the Hon. Gary R. Brown," and ordering that, in the future, "***any effort to take discovery***

*prior to service must follow the sensible protocol adopted by Magistrate Judge Brown* in *In re: []Adult Film [] Cases.*"); *see also, e.g., Patrick Collins, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 75986, 2-3 (E.D.N.Y. May 31, 2012) (citing *In re: Adult Film Cases* and finding "that *for the reasons set forth in the well-reasoned decision of Magistrate Judge Gary R. Brown* dated May 1, 2012, plaintiff has not satisfied the requirement of establishing that defendants participated in the same "transaction" or "occurrence" within the meaning of Fed. R. Civ. P. 20."); *Zero Tolerance Entm't, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 78834 (S.D.N.Y. June 5, 2012) (severing all Does other than Doe No. 1 and *explicitly "adopt[ing] the procedures of Judge McMahon and Magistrate Judge Brown*"); *Malibu Media, LLC v. Doe*, 2012 U.S. Dist. LEXIS 96351 (E.D. Cal. July 10, 2012) (citing *In re: Adult Film Cases* and denying early discovery for all Does other than Doe No. 1); *Patrick Collins, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 96350 (E.D. Cal. July 10, 2012) (same); *Malibu Media, LLC* v. *Doe*, 2012 U.S. Dist. LEXIS 96333 (E.D. Cal. July 10, 2012) (same); *Malibu Media, LLC v. Doe*, 2012 U.S. Dist. LEXIS 94705 (E.D. Cal. July 6, 2012) (same).

**(b)      Malibu Media has Actively Ignored Judge Brown's Order in *In re: Adult Film Cases***

Judge Brown's May 1, 2012, order and recommendation in *In re: Adult Film Cases* was fairly devastating to Malibu Media's business model, so Malibu Media essentially ignored it and went ahead and carried on with business as usual.  As Judge Brown noted on July 31, 2012, "Less than three months after addressing concerns about potentially abusive litigation tactics by plaintiffs in these actions, this Court is *again* confronted with indicia of improper conduct by plaintiffs' counsel, to wit: plaintiffs' counsel apparently ignored, or tried to circumvent, the very safeguards the undersigned put in place to help prevent unfair litigation tactics while permitting plaintiffs to pursue their claims."  *In re: BitTorrent Adult Film Copyright Infringement Cases,* E.D.N.Y. Case No. 12-cv-1147-JS-GRB, Dkt. No. 9, 7/31/12 (*In re: Adult Film Cases II*) (emphasis in original).  Specifically, in *In re: Adult Film Cases I*, after severing all Does other than Doe No. 1, Judge Brown ordered that any ISP subscriber information *for Doe No. 1* be produced directly to the Court, not to

plaintiff's counsel.  Counsel for Malibu Media then went ahead and issued a subpoena for Doe No. 1, directing the information to be produced to the offices of counsel for Malibu Media; essentially ignoring this aspect of the Court's order.  Thus, in *In re: Adult Film Cases II,* Judge Brown explained

> "This Court's Order cataloged abuses tactics by plaintiffs [*i.e.*, Malibu Media, LLC and Patrick Collins, Inc.] in related actions against John Doe defendants, and expressed, in no uncertain terms, this Court's concerns about the conduct of this litigation going forward, particularly in light of the serious questions about plaintiffs ability to properly identify defendants based solely upon their IP addresses. As such, it is astonishing that counsel failed to observe the precautions established in the Order. On this record, it is difficult to ascertain whether this apparent failure was deliberate, or simply the result of gross inattention." *In re: Adult Film Cases II,* at p. 5.

Since Malibu Media is content to ignore the procedural safeguards specifically ordered by Judge Brown in a case pending before Judge Brown, it should come as little surprise then that Malibu Media is not following Judge Brown's protocol here.  Judge Brown also ordered, unambiguously that, "[u]nder no circumstances are plaintiffs [i.e. Malibu Media and Patrick Collins] permitted to seek or obtain the telephone numbers or email addresses" for the Does.  *In re Adult Film Cases, supra,* at p. 24.  Several days later, Malibu Media then began requesting that very same information from the Courts of this District.  Dec'l. of Morgan E. Pietz, ¶¶ 20–21.

In short, for the same reasons that Judge Brown—and many other courts since— have denied early discovery as to all Does other than Doe No 1., so too should this Court do the same, and endorse the "sensible protocol adopted by Judge Brown."

/ / /

/ / /

**JOHN DOES' OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR LEAVE TO SERVE THIRD PARTY SUBPOENAS PRIOR TO A RULE 26(f) CONFERENCE**

# V.  CONCLUSION

Judge McMahon of New York's Southern District aptly concluded, "I am second to none in my dismay at the theft of copyrighted material that occurs every day on the Internet.  However, there is a right way to litigate and a wrong way to litigate, and so far this way strikes me as the wrong way." *Digital Sins, Inc.*, *supra*, at p. 8.  The same can be said here.

Moving Parties respectfully request that the Court deny plaintiff's request for early discovery, because plaintiff has failed to show that there is "good cause," for issuing subpoenas, given that the requested subpoenas (i) are not "very likely" to identify defendants, (ii) are not "reasonably likely" to effectuate service, (iii) the complaint could not withstand a motion to dismiss for misjoinder, (iv) and in light of Malibu Media's troubling, and uncontroverted history of "abusive litigation tactics."  Further, as detailed in the accompanying counter-motion for severance, all Does other than Doe No. 1 should be severed and dropped, or dismissed without prejudice, as impermissibly joined.


Respectfully submitted,

DATED: September 4, 2012


 _/s/ Morgan E. Pietz_____

Morgan E. Pietz (Cal. Bar No. 260629)
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone:   (310) 424-5557
Facsimile:    (310) 546-5301

**JOHN DOES' OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR LEAVE TO SERVE THIRD PARTY SUBPOENAS PRIOR TO A RULE 26(f) CONFERENCE**