Leemore Kushner (SBN 221969)
KUSHNER LAW GROUP
801 North Citrus Avenue
Los Angeles, California 90038
Telephone: (323) 515-7894
Facsimile: (323) 544-8170
Email: lkushner@kushnerlawgroup.com

Attorneys for Plaintiff Malibu Media, LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MALIBU MEDIA, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>JOHN DOES 1 through 10,<br><br>Defendants. | Case Nos. CV 12-3614 RGK (SSx)<br>CV 12-3615 RGK (SSx)<br>CV 12-3620 RGK (SSx)<br>CV 12-3622 RGK (SSx)<br>CV 12-4649 RGK (SSx)<br>CV 12-4651 RGK (SSx)<br>CV 12-4652 RGK (SSx)<br>CV 12-4653 RGK (SSx)<br>CV 12-4656 RGK (SSx)<br>CV 12-4660 RGK (SSx)<br>CV 12-4661 RGK (SSx)<br>CV 12-4662 RGK (SSx)<br>CV 12-650 RGK (SSx)<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO SERVE THIRD PARTY SUBPOENAS PRIOR TO A RULE 26(f) CONFERENCE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: September 17, 2012<br>Time: 9:00 a.m.<br>Place: Ctrm 850 (Roybal) |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The issue in Plaintiff's motion is simple: does good cause exist to allow Plaintiff to serve discovery prior to a Rule 26(f) conference? As discussed below and as found by nearly every court throughout the country, including this Court, the answer is "yes." Rather than address the substance of Plaintiff's motion,[1] Defendants filed an opposition brief that attacks Plaintiff based on a fantastical account of Plaintiff's litigation strategy. Though represented by counsel, Defendants contend that "abusive litigation tactics" and "coercive settlements" are at risk, however, Defendants have not cited to a single instance in which they were subjected to abusive litigation tactics by counsel. As one court noted, Defendants' argument about abusive litigation tactics is simply without any merit in cases such as this where Defendants are represented by counsel. *Malibu Media, LLC v. John Does 1-9*, Case No. 8:12-cv-669-SDM-AEP, Docket no. 25 at p. 7 (M.D.Fla. July 6, 2012).

Defendants are attempting to influence this Court to make a decision based on accusations in other cases involving other counsel and other plaintiffs. Indeed, Defendants cite to cases that can only refer to vague, anecdotal accusations of improper settlement tactics. These erroneous conclusions are propagated by anti-copyright blogs as a suggested defense strategy. While Defendants go to substantial effort to decry Plaintiff's purpose and settlement attempts, Defendants have not and cannot provide one specific example of Plaintiff improperly holding a defendant to

---

[1] Defendants do not substantively address Plaintiff's joinder arguments, and instead, in a blatant attempt to circumvent this Court's 20-page limit for opposition briefs, refers the Court to an 18-page motion to sever that Defendants filed concurrently with their opposition briefs. Defendants' motion to sever should not be considered herewith.

account. *See Patrick Collins, Inc. v. Does 1-54*, 2012 WL 911432, at *4 (D.Ariz. Mar.19, 2012) ("The likelihood that [Defendants] will be subject to such tactics is minimal here; the Court will not conclude based on the tactics of other lawsuits in other districts that this suit was brought for a purely improper purpose." *Patrick Collins, Inc.*, 2012 WL 911432; *see also, Third Degree Films v. Does 1-36*, 2012 WL 2522151 (E.D.Mich. May 29, 2012) (denying a Doe defendant's motion to quash and stating: "while Defendant claims that this suit was brought only to scare up settlements [Citation], Defendant has offered no case-specific facts supporting this claim. Rather, Defendant relies on the conduct of adult-film companies in other cases. This guilt-by-association argument does not justify quashing the subpoena that this Plaintiff, Third Degree Films, served on Defendant's ISP….").

Defendants essentially argue that Plaintiff's business model is designed so that Plaintiff may initiate litigation against multiple John Doe Defendants, obtain early requested discovery from the ISPs to identify the ISP customers, and then present the ISP customers with a situation akin to a "Sophie's choice" – namely, to settle with Plaintiff for a nominal amount or be named as a defendant in this case and face damage to their reputation associated with defending this case. Essentially, Defendants are requesting the Court create a special exception under the Copyright Act for cases such as this in which the copyrighted material contains pornography. *See Malibu Media, LLC v. John Does 1-9*, Case No. 8:12-cv-00669-SDM-AEP. Docket No. 25 at p. 7 (M.D.Fla. July 6, 2012). Indeed, it is highly unlikely that Defendants' concerns "would be as heightened and given as much attention by other courts if the alleged protected material was copyrighted music rather than pornography." *Id.* at n.3; *see also, Patrick Collins, Inc. v. Does 1-54*, 2012 WL 911432, at *4 (D.Ariz. Mar.19, 2012) ("Although the Court acknowledges that there is some social stigma attached to consuming pornography, Defendant strenuously denies the allegations, and it is the rare civil lawsuit in which a defendant is not

accused of behavior of which others may disapprove. The nature of the allegations alone do not merit a protective order.").

But the fact that pornographic material is at issue in this suit should have no bearing on the Court's decision. Indeed, bias against Plaintiff for the work that it produces does not belong in a federal courthouse, particularly in light of the Fifth Circuit's oft-cited decision in *Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F.2d 852 (5th Cir. 1979), which held that the copyright statute contains no explicit or implicit bar to copyrighting obscene materials and provides for a copyright of all creative works, obscene or non-obscene, that otherwise meet the requirements of the Copyright Act. *See also, Jartech, Inc. v. Clancy*, 666 F.2d 403, 406 (9th Cir. 1982) ("Acceptance of an obscenity defense [to copyright laws] would fragment copyright enforcement, protecting registered materials in a certain community, while, in effect, authorizing pirating in another locale.").

Finally, to address Defendants' criticism of Plaintiff's attempt to settle its disputes with the doe defendants prior to naming and serving them with process, such settlement demands are routinely made prior to the filing of a lawsuit. This is in line with the well-established public policy favoring resolution through settlements. *Marek v. Chesny*, 473 U.S. 1, 11 (1985) ("Rule 68's policy of encouraging settlements is neutral, favoring neither plaintiffs nor defendants; it expresses a clear policy of favoring settlement of all lawsuits."). Furthermore, Plaintiff has a First Amendment right under the petition clause to make a settlement demand. *Sosa v. DirectTV*, 437 F. 3d 923, 937 (9th Cir. 2006) (holding "the protections of the Petition Clause extend to settlement demands as a class," including those made during and prior to a suit.). The only difference between this case and the countless others filed every day by other plaintiffs in a broad array of civil litigation is that Plaintiff does not have the ability to identify the Doe defendants before the suit is filed.

3
Plaintiff's Reply In Support of Its Renewed Motion for Leave to Serve Third Party Subpoenas

The fact that Plaintiff has brought so many suits is not an indication that Plaintiff is misusing the legal process; rather, it is indicative of the rampant infringement occurring throughout the country. Plaintiff's motivation for bringing these suits is simple: to hold infringers like Defendants herein liable for their outright and continued theft. Indeed, the online theft of Plaintiff's property greatly damages its business, products, and reputation, and this mass online infringement is pervasive in the adult movie industry. According to a Miami New Times survey, thirty two percent (32%) of respondents <u>admit</u> to illegally downloading their adult movies.[2] Plaintiff's motivation for bringing these suits is to hold the infringers liable for their theft and, by so doing, to deter the future theft of its movies. If there were an easier way to stop the infringement, Plaintiff would immediately pursue it.

As established in Plaintiff's motion and below, good cause exists for Plaintiff to issue Rule 45 subpoenas prior to a Rule 26(f) conference in these related cases, and Plaintiff respectfully requests that the Court grant Plaintiff the opportunity to discover the identities of the Doe defendants and proceed with these cases.

## II.  GOOD CAUSE EXISTS FOR EARLY DISCOVERY

Plaintiff established in its opening brief that good cause exists for the requested early discovery. "In Internet infringement cases, courts routinely find good cause exists to issue a Rule 45 subpoena to discover a Doe defendant's identity, prior to a Rule 26(f) conference, where a plaintiff makes: (1) a prima facie showing of infringement, (2) there is no other way to identify the Doe Defendant, and (3) there is a risk an ISP will destroy its logs prior to the conference." *UMG Recording, Inc. v. Doe*, 2008 WL 4104214 at *4 (N.D.Cal. 2008). In addition, some courts also analyze a defendant's First Amendment right to privacy in determining

---

[2] See http://business.avn.com/articles/video/Miami-New-Times-Releases-Sex-Survey-Results-447237.html

whether to allow the discovery. In these cases, courts require Plaintiff to (4) specify the discovery requested, (5) demonstrate a central need for the subpoenaed information to advance the asserted claims, and (6) establish that the party's expectation of privacy does not outweigh the need for the requested discovery. *Sony Music Entm't v. Does 1-40*, 326 F.Supp.2d 556, 564-65 (S.D.N.Y. 2004).

      In this case, Plaintiff satisfied the above-listed factors. *First*, in its Complaints, Plaintiff asserts that it holds valid copyrights. Complaint, ¶ 11 and Ex. B. Further, the signed declaration of Tobias Fieser states that Plaintiff's research indicated that the works have been infringed upon and that he was able to isolate the transactions and the IP addresses being used on the peer-to-peer network to reproduce, distribute, display, or perform Plaintiff's copyrighted works. *Second*, Plaintiff established that it lacks any other means of obtaining the subpoenaed information. Plaintiff only has the IP addresses and cannot locate any further information. Rather, once the IP addresses, plus the date and time of the detected and documented infringing activity are provided to the ISP, the ISPs can access the identifying information of the subscriber. Plaintiff has taken all of the steps it can to identify the Doe defendants. *Third*, Plaintiff demonstrated through the declaration of Tobias Fieser that "[m]any ISPs only retain the information sufficient to correlate an IP address to a person at a given time for a very limited amount of time." [Docket no. 4-1, ¶ 11.] Thus, there is a chance that the ISPs will destroy the logs needed by Plaintiff. *Fourth*, Plaintiff has sufficiently described the John Doe Defendants by listing the IP address assigned to them on the day Plaintiff alleges the Defendants engaged in the infringing conduct in a chart attached as Exhibit A to the Complaint. *Fifth*, Plaintiff has demonstrated the need for the subpoenaed information in order to advance its claims as there appears no other means of obtaining this information and the information is needed in order to prosecute Plaintiff's viable claim for copyright infringement. *Sixth*, and finally, Plaintiff's interest in knowing Defendants' true identities outweighs Defendants'

interests in remaining anonymous. Plaintiff has a strong legitimate interest in protecting its copyrights and it has been held that copyright infringers have no legitimate expectation of privacy in the subscriber information they provide to ISPs. *Doe v. S.E.C.*, 2011 WL 4593181 at *3 (N.D.Cal. Oct. 4, 2011) ("Internet subscribers do not have a reasonable expectation of privacy in subscriber information they have already conveyed to their [Internet Service Providers]."); *see also, Guest v. Leis*, 255 F.3d 325, 226 (6th Cir. 2001) (holding that "computer users do not have a legitimate expectation of privacy in their subscriber information because they have conveyed it to another person – the system operator"); *U.S. v. Hambrick*, Civ. No. 99-4793, 2000 WL 1062039 at *4 (4th Cir. Aug. 3, 2000) (a person does not have a privacy interest in the account information given to the ISP in order to establish an email account); *Achte/Neinte Boll Kino Beteiligungs Gmbh & Co. v. Does 1-4,577*, 736 F.Supp.2d 212, 215 (D.D.C. 2010) (same); *U.S. v. Kennedy*, 81 F.Supp.2d 1103, 1110 (D.Kan. 2000) (defendant's right to privacy was not violated when an ISP turned over his subscriber information because there is no expectation of privacy in information provided to third parties).

### III. THE REQUESTED DISCOVERY SEEKS RELEVANT INFORMATION

Defendants contends that early discovery should not be allowed because the identification of the IP address holder will not necessarily identify the purported copyright infringer. Though unlikely, that may be the case. Nonetheless, the information sought is still relevant and discoverable. Indeed, Rule 26 of the Federal Rules of Civil Procedure defines the scope of discovery as including "any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things *and the identity of the location or persons who know of any discoverable matter*." Fed. R. Civ. P. 26(b)(1) (emphasis added). Relevant

6

information for discovery purposes includes any information "reasonably calculated to lead to the discovery of admissible evidence." *Id.*

The Eastern District of Pennsylvania court recently discussed whether an IP address was sufficient to identify the infringer:

> The Court acknowledges that Verizon's compliance with the subpoena may not directly reveal the identity of an infringer. Indeed, the subscriber information Verizon discloses will only reveal the account holder's information, and it may be that a third party used that subscriber's IP address to commit the infringement alleged in this case.

*Raw Films, Ltd v. John Does 1-15*, 2012 WL 1019067 (E.D.Pa. March 26, 2012) (internal citations omitted). The Court went on to note that while the IP address did not guarantee the subscriber was the infringer, "[t]he subpoena is specific enough to give rise to a reasonable likelihood that information facilitating service upon proper defendants will be disclosed if the ISPs comply." *Id.*

Defendant relies heavily on Judge Brown's opinion in *In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 WL 1570765 (E.D.N.Y. June 12, 2012), in the Eastern District of New York, where Judge Brown questioned the likelihood that the infringer was the owner of the IP address.[3] Plaintiff respectfully disagrees with Judge Brown's opinion, particularly in light of the fact that recent technological advances make it more likely that a wireless account will be secured and can easily be traced to a household where the subscriber either is the infringer or

---

[3] Defendant's numerous references in his/her Motion to the May 1, 2012 decision by Judge Gary R. Brown of the Eastern District of New York, *In re Bittorrent Adult Film Copyright Infringement Cases*, 2012 WL 1570765 (E.D.N.Y. June 12, 2012), is unpersuasive. Indeed, just one month after Judge Brown issued his opinion therein, Judge E. Thomas Boyle of the same court in the Eastern District of New York, reached the opposite result in *Malibu Media, LLC v. John Does 1-13*, 2012 WL 2325588 (E.D.N.Y. June 19, 2012) ("*Malibu Media*"), finding in a case similar to this that joinder is proper, and denying a Doe defendant's motion to quash the subpoena. Significantly, Judge Brown's decision in *In re Bittorrent* was decided *ex parte* and without a hearing whereas Judge Boyle's decision in *Malibu Media* was made following an hour-long hearing with counsel for Plaintiff.

7
Plaintiff's Reply In Support of Its Renewed Motion for Leave to Serve Third Party Subpoenas

knows the infringer. Recently, PC Magazine published an article regarding the scarcity of open wireless signals, stating: "These days, you are lucky to find one in 100 Wi-Fi connections that are not protected by passwords of some sort."[4] The author explains why routers are now more likely to be secured: "The reason for the change is simple: the router manufacturers decided to make users employ security with the set-up software. As people upgrade to newer, faster routers, the wide-open WiFi golden era came to an end." This article, published on March 26, 2012, runs contrary to Judge Brown's assertions and supports the idea that most households do have closed, protected wireless that are not likely to be used by a neighbor or interloper.

Furthermore, Plaintiff uses the same process as Federal Law Enforcement to identify cyber crimes. In a Statement of Deputy Assistant Attorney General Jason Weinstein before the Senate Judiciary on Privacy, Technology and the Law, he discusses how Federal law enforcement use IP addresses to identify an individual.

> When a criminal uses a computer to commit crimes, law enforcement may be able, through lawful legal process, to identify the computer or subscriber account based on its IP address. This information is essential to identifying offenders, locating fugitives, thwarting cyber intrusions, protecting children from sexual exploitation and neutralizing terrorist threats.[5]

The information sought by Plaintiff falls squarely within the broad scope of discovery and is therefore warranted in this matter. The identity of the IP address holder is relevant under Rule 26, in that it is "reasonably calculated" to lead to the identity of the infringer, whether it is the IP address holder or some other individual. Thus, any concern about identifying a potentially innocent ISP customer, who

---

[4] *See Free Wi-Fi is Gone Forever*, www.pcmag.com/article2/0,2817,2402137,00.asp

[5] Statement of Deputy Assistant Attorney General Jason Weinstein Before the Senate Judiciary Subcommittee on Privacy, Technology and the Law available at www.justice.gov.

happens to fall within the Plaintiff's discovery requests upon the ISPs, is minimal and not an issue that should warrant the Court to minimize or even prohibit the otherwise legitimate, relevant, and probative discovery.

## IV. PLAINTIFF HAS EVERY INTENTION OF LITIGATING THIS CASE

Defendants erroneously suggest that Plaintiff has no intention of actually litigating the case and that "no defendant has ever been served in one of these mass copyright cases." Motion, p.9. Defendant is wrong. Plaintiff has sued numerous individual defendants for copyright infringement in courts throughout the country, and has every intention of litigating these cases as well.[6]

## III. DEFENDANTS DO NOT HAVE AN EXPECTATION OF PRIVACY

Judge Howell of the District Court for the District of Columbia recently denied a motion filed by Defendants' counsel – Morgan Pietz – containing virtually identical arguments, and held that the putative Doe defendants did not have a First Amendment right to proceed anonymously in the action: "The use of anonymity as a shield from copyright liability is not a motivation that warrants protection from the Court. To the extent that the putative defendant has a First Amendment interest at stake, that interest is small. ***The First Amendment does not protect copyright***

---

[6] *See, e.g., Malibu Media LLC v. Southgate*, 3:12-cv-00369-DMS-WMC (S.D.Cal.); *Malibu Media, LLC v. Abrahimzadez*, 1:12-cv-01200-ESH (D.D.C.); *Malibu Media LLC v. Bochnak*, 1:12-cv-07030 (N.D.Ill.); *Malibu Media LLC v. Siembida*, 1:12-cv-07031 (N.D.Ill.); *Malibu Media LLC v. Vancamp*, 2:12-cv-13887-PDB-DRG (E.D.Mich.); *Malibu Media LLC v. Fantalis*, 1:12-cv-00886-MEH (D.Colo.); *Malibu Media LLC v. Xu*, 1:12-cv-1866-MSK-MEH (D.Colo.); *Malibu Media LLC v. Allison*, 1:12-cv-1867-MSK-MEH (D.Colo.); *Malibu Media LLC v. Ramsey*, 1:12-cv-1868-MSK-MEH (D.Colo.); *Malibu Media LLC v. Tipton*, 1:12-cv-1869-MSK-MEH (D.Colo.); *Malibu Media LLC v. Kahrs*, 1:12-cv-1870-MSK-MEH (D.Colo.); *Malibu Media LLC v. Domindo*, 1:12-cv-1871-MSK-MEH (D.Colo.); *Malibu Media LLC v. Peng*, 1:12-cv-1872-MSK-MEH (D.Colo.); *Malibu Media LLC v. Maness*, 1:12-cv-1873-MSK-MEH (D.Colo.); *Malibu Media LLC v. Nelson*, 1:12-cv-1875-MSK-MEH (D.Colo.); *Malibu Media LLC v. Geary*, 1:12-cv-1876-MSK-MEH (D.Colo.); *Malibu Media LLC v. Detweiler*, 2:12-cv-4253-ER (E.D.Pa.); *Malibu Media LLC v. Johnston*, 2:12-cv-4200-JHS (E.D.Pa.).

1  *infringement.*"  *Malibu Media, LLC v. John Does 1-14*, Case No. 12-00764 (BAH),
2  Docket no. 14 at pp. 6-7 (D.D.C. July 25, 2012) (emphasis added); *see also, Harper*
3  *& Row Publishers, Inc. v. Nat'l Enters.*, 471 U.S. 539, 560 (1985); *A&M Records v.*
4  *Napster, Inc.*, 239 F.3d 1004, 1028 (9th Cir. 2001) (holding that the First
5  Amendment does not protect use of peer-to-peer file sharing network that
6  constitutes copyright infringement); *Columbia Pictures, Inc. v. Bunnell* 245 F.R.D.
7  443, 451-52 (C.D.Cal. 2007) ("To the extent the users are engaged in copyright
8  infringement, the First Amendment affords them no protection whatsoever.") *Arista*
9  *Records v. Does 1-19*, 551 F.Supp.2d 1, 8 (D.D.C.) ("First Amendment privacy
10 interests are exceedingly small where the 'speech' is the alleged infringement of
11 copyrights."). Even if the users are engaged in legal file sharing, "they have little to
12 no expectation of privacy because they are broadcasting their identifying
13 information to everyone in the BitTorrent 'swarm' as they download the file."
14 *Columbia Pictures*, 245 F.R.D. 443 at 452. Moreover, as discussed above,
15 numerous courts have found that copyright infringers have no legitimate expectation
16 of privacy in the subscriber information they provide to ISPs. *Doe v. S.E.C.*, 2011
17 WL 4593181 at *3; *Guest v. Leis*, 255 F.3d 325 at 226; *U.S. v. Hambrick*, 2000 WL
18 1062039 at *4; *Achte/Neinte Boll Kino Beteiligungs Gmbh & Co. v. Does 1-4,577*,
19 736 F.Supp.2d 212, 215 (D.D.C. 2010).

## IV.   CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court grant leave to Plaintiff to issue Rule 45 subpoenas to the Defendants' ISPs, and further hold that joinder is proper at this stage in the litigation.

DATED: September 10, 2012          KUSHNER LAW GROUP

By:   /s/ Leemore L. Kushner
      Leemore L. Kushner
      Attorneys for Plaintiff Malibu Media, LLC

10